STATE EX REL. SCHAETZ, Respondent, vs. MANDERS, Building Inspector, Appellant.

*October 16—November 10, 1931.*

*Thos. C. Dwyer* of Green Bay, for the appellant.

For the respondent there was a brief by *Silverwood & Fontaine* of Green Bay, and oral argument by *T. P. Silverwood*.

OWEN, J.   The plaintiff is the owner of premises in the city of Green Bay which for many years were used as a dairy.   For some time prior to March 29, 1929, the premises were occupied by the Modern Dairy, a Wisconsin corporation, which conducted a dairy business therein.   The building on the premises was equipped with machinery built into it necessary and suitable for conducting such business.

On March 29, 1929, a receiver was appointed for the said Modern Dairy, who took possession of the assets of said corporation.   The receiver did not continue to conduct the business of the dairy in this building, but he occupied the same for at least one month and paid rent therefor.   On the 18th day of November, 1930, the receiver, having wound up the affairs of the insolvent corporation, was discharged by order of the circuit court.   Due to some mistake or oversight, a second order of discharge was entered on the 20th day of February, 1931.   The plaintiff did not assert his right of re-entry or repossession of the premises occupied by the insolvent corporation until after the 15th day of February, 1931. Immediately thereafter the plaintiff entered into a contract for the sale of said premises with Homer LaViolette, who intended to purchase the same for the purpose of conducting a dairy business therein.   Thereafter LaViolette applied to the defendant building inspector for a permit to carry on the dairy business in said premises, which permit was denied under date of March 6, 1930, whereupon the contract of sale was canceled or abrogated.

On the 3d of July, 1930, the plaintiff applied to the defendant, building inspector of Green Bay, for a permit to remodel said premises in accordance with plans and specifica-

tions submitted, which plans and specifications contemplated the further use of said premises as and for a dairy. The defendant refused to grant the permit, because he held that the further use of said premises as a dairy was prohibited by the zoning ordinance of the city of Green Bay. Sec. 9 of the zoning ordinance of the city of Green Bay, adopted June 19, 1929, provides:

"The lawful use of land existing at the time of the adoption of this ordinance may be conducted, although such use does not conform to the provisions hereof, but if such nonconforming use is discontinued, any future use of said premises shall be in conformity with the provisions of this ordinance."

The premises of the plaintiff were in a section of the city which the zoning ordinance classified as a Residential Class A District. The building inspector contends that because the premises were not used as and for a dairy after the receiver took possession of the insolvent tenant up until July 3, 1930, its use as a dairy had been discontinued.

The question presented is the narrow one as to whether the fact that a dairy business had not been conducted in the premises during such time as above stated, amounted to a discontinuance of the use of said premises as a dairy. The use to which they were devoted was of a very special nature. While the plaintiff did not exercise his right to repossess himself of the premises immediately after the receiver had ceased to pay rent, this does not necessarily force the conclusion that he intended to or did abandon the use of said premises as and for a dairy. Although he had the right to repossess himself of the premises and make other arrangements for the prosecution of a dairy business therein, it was not necessary for him so to do in order to avoid the conclusion that he had abandoned the premises for such use. He was privileged to take a reasonable time at least to secure either a tenant or a purchaser for said building. Considera-

tions of propriety might have prompted him not to interfere with the possession of the receiver even though he had a legal right so to do. At any rate, it is apparent that the securing of another to continue the dairy business in said premises, either as owner or lessee, was a matter that could not be brought about immediately. It necessarily required some time, and we do not think that the mere fact that the dairy business was not conducted therein for the matter of a few months resulted in that discontinuance of the use of the premises contemplated by the ordinance.

Whether the city of Green Bay could have prohibited the continuance of a non-conforming use within the restricted district need not be considered, for the reason that no attempt to that end was made. It was plainly the intent of the ordinance to permit the continuance of non-conforming uses. While we have found no authority construing the legal meaning of the word "discontinue," we think that, as used in this ordinance, it means something more than a mere suspension. It was not the intention of the ordinance to destroy the right of an owner to continue the use of his premises by the mere fact that his tenant became insolvent. We agree with the circuit court that " 'discontinuance,' as it is used in the ordinance, cannot mean a temporary non-occupancy of the building or a temporary cessation of the business. . . . The word 'discontinuance' as it is used in the ordinance is synonymous with abandonment. It connotes a voluntary, affirmative, completed act." We think the right secured to the owner by the terms of the ordinance is not lost by either accident or unpropitious circumstances over which he has no control which brings about a mere suspension of the non-conforming use. It is a right extended to him and to be enjoyed by him until he voluntarily relinquishes or abandons it. We hold that the peremptory writ of *mandamus* was properly granted.

*By the Court.*—Judgment affirmed.