ESTATE OF EANNELLI: VENCI, Administratrix, Appellant, vs. EANNELLI, Administrator, and others, Respondents.

*November 7—December 4, 1956.*

194

For the appellant there was a brief and oral argument by *Vaughn S. Conway* of Baraboo.

For the respondents there was a brief by *Chester J. Niebler* of Milwaukee, attorney, and *M. J. Paul* of Berlin, and *Marshall J. Herro* of Milwaukee, both of counsel, and oral argument by *Mr. Niebler.*

CURRIE, J.    The two issues on this appeal are:

(1) Did the county court have the power to revoke the letters of administration originally issued to Angeline Venci; and

(2) Is the said administratrix entitled to a charge against the assets of the estate for any of the disbursements made and the expenses incurred by her as listed in the final account?

Sec. 311.12, Stats., appears to be the only statute dealing with the subject of revocation of letters of administration. Such statute authorizes the county court to revoke letters of administration in a situation where a will of the deceased is duly proved and allowed by the court. The attorney for the

appellant administratrix contends that the county court has no power to revoke letters of administration except for the single ground stated in such statute. We cannot agree. This court in the early case of *In re Fisher* (1862), 15 Wis. *511, *521, declared, "The county court, sitting as a court of probate, may, at any time, in furtherance of justice, revoke an order which has been irregularly made or procured by fraud." See also *Brunson v. Burnett* (1849), 1 Chand. 136, 2 Pin. 185, 190, holding that the authority of the county court to revoke letters of administration is inherent to the general powers of the court, and 21 Am. Jur., Executors and Administrators, pp. 455, 456, sec. 144.

The words *"irregularly made"* contained in the above quotation from *In re Fisher, supra,* undoubtedly refer to jurisdictional rather than nonjurisdictional error. Except for the allegation in the original petition for administration that there had been simultaneous death of Anna, Massemino, Anthony, and George Eannelli, the county court had no jurisdiction to have issued letters of administration to Angeline Venci, administratrix, on July 21, 1951. Inasmuch as such deaths were not simultaneous because of Anthony having survived the other three, the petition had not been made by an heir or next of kin. It is, therefore, our considered opinion that the trial court had no discretion but to revoke such letters of administration previously issued to Angeline Venci.

However, such revocation of letters of administration does not determine the question of whether Angeline Venci is entitled to credit for any of the disbursements made and expenses incurred while administering the estate prior to such revocation. This is because of the provisions of sec. 311.14, Stats., which provide as follows:

"All acts of an executor or administrator as such, before the revocation of his letters testamentary or of administration, shall be as valid to all intents and purposes as if such executor or administrator had continued lawfully to execute the duties of his trust."

An examination of Angeline Venci's final account, of the testimony taken, and of the exhibits offered to support the disbursements made and expenses incurred by her, for which she claims credit in her account, discloses that, outside of a disbursement in the sum of $2,564.78 for the accountants' audit of the books and records of the Granite Lumber Company, most of the other amounts claimed are for attorneys' fees and disbursements in conducting the litigation to determine which of the four members of the Eannelli family killed in the accident of June 12, 1951, had survived. Such litigation resulted in a determination that the son, Anthony Eannelli, was such survivor so that the net estates of both Anna and Massemino Eannelli will ultimately be distributed to Anthony's paternal grandparents, Donato and Mary Eannelli. Angeline Venci devoted her efforts in such litigation to an attempt to establish Anna C. Eannelli as the survivor so that Angeline Venci and her sisters and brothers, as the heirs and next of kin of Anna, would take all the net assets of the Anna C. and Massemino Eannelli estates. By seeking to charge the attorney fees and disbursements of her counsel in such litigation against the assets of the Anna C. Eannelli estate, Angeline Venci, in effect, is endeavoring to achieve such reimbursement at the expense of property equitably owned by Donato and Mary Eannelli. Such a result appears to us to be highly incongruous because it, in effect, would be requiring the successful litigants to pay the expenses of their defeated adversary.

In so far as litigating heirship in the Anna C. Eannelli estate is concerned, Angeline Venci in her capacity as administratrix was in reality not an interested party but a mere stakeholder. As administratrix charged with the duty of preserving and protecting the assets of the estate, she should not have expended the estate's funds in a fight between two sets of conflicting heirs to determine who should inherit the estate. There, therefore, was a manifest conflict in interest

between the roles played by her as an heir interested in the outcome of the litigation and as administratrix.

In *Estate of Donges* (1899), 103 Wis. 497, 518, 79 N. W. 786, this court stated that "courts should be cautious in allowing for services ostensibly rendered to executors, but in spirit and effect rendered to one of the opposing interests, which should bear its own expenses." See also *Estate of Dennett* (1929), 200 Wis. 84, 227 N. W. 280.

The situation in the instant case is complicated by the fact that the litigation over the question, of which member of the four members of the family involved in the fatal accident survived, affected the determination of heirship in the Massemino Eannelli as well as the Anna C. Eannelli estates. If Anna were the last survivor, then her estate would have been entitled to receive the distribution of the net assets of the Massemino Eannelli estate. From this standpoint the administratrix of the Anna C. Eannelli estate did have an interest to protect. However, because the determination of heirship in both estates was consolidated for purposes of trial it is impossible to separate Angeline Venci's role as an individual, interested in the outcome of the heirship determination in the Anna C. Eannelli estate, from that of an administratrix seeking to have such estate established as the ultimate distributee of the Massemino Eannelli estate. Because of the obvious conflict of interest present, Angeline Venci should not have proceeded as administratrix to contract for legal services to conduct such litigation, and to incur the large expenditures for the disbursements of counsel incident to such litigation, without first having formally presented the matter to the county court and requested the court's instructions in the matter.

The decision in *State ex rel. Peterson v. Circuit Court* (1922), 177 Wis. 548, 554, 188 N. W. 645, makes it clear that in any case where a personal representative of an estate is presented with a situation, in which there is a reasonable doubt as to his right to take certain contemplated action, he

should apply to the court for instructions. In the opinion in such case, the court stated:

"In administering the property of an intestate an administrator's functions, like those of an executor, are in the nature of those of a trustee, and he has at all times the right, and in many instances it becomes his duty, to apply to the court for direction and guidance."

An excellent statement of the law on this point is to be found in 1 Gary, Wisconsin Probate Law (5th ed.), p. 267, sec. 284, as follows:

"An executor or administrator, being an officer or 'arm' of the court, has the right to apply to the court which appointed him for advice or authority when reasonably in doubt as to what course of action to pursue. In some instances, in fact, it is not only the right but also the duty of the representative to apply for direction and guidance, and it is very unwise to fail to do so if there is a chance of liability and doubt as to right or power to act as desired. Such applications may be, and usually are, made *ex parte* and without notice to those in interest. The ruling made on an *ex parte* application is not binding and conclusive upon those in interest and does not preclude subsequent attack upon an act of the executor or administrator in reliance upon the order of the court. As a general proposition, however, an executor or administrator acting according to directions of the court after duly presenting the facts, though without notice to others in interest, is protected against liability, unless the order was beyond the jurisdiction of the court."

Angeline Venci's final account discloses payment to Attorney Vaughn Conway of $1,500 to apply on attorney fees and for $482.47 disbursements made by him, and $407.75 paid directly by the administratrix to one Elvira Whalen for reporting the original trial. In addition the account shows as unpaid a charge of $16,307.42 for attorney fees and disbursements to Conway, and $807.19 to Attorney William Belter for attorney fees and disbursements. At the hearing on the account, Conway gave the following breakdown of the $16,307.42 item:

### Services

| | |
|---|---:|
| 4 days in the supreme court at $150 per day .......................................$ | 600.00 |
| 13½ days in the trial courts at $100 per day ............................... | 1,350.00 |
| 81 days of office work and investigation at $75 per day......................... | 6,075.00 |
| 396½ days of miscellaneous work at $10 per hour............................. | 3,965.00 |
| 183 letters sent at $3 each............... | 549.00 |
| 177 letters received at $2 each............ | 354.00 |
| | $12,893.00 |
| Disbursements as itemized in an exhibit submitted.................... | 3,414.42 |
| Total ..............$16,307.42 | |

While the final account indicated that the entire $16,307.42 was still due, an itemized statement of the fees and disbursements remaining unpaid, which Conway filed as an exhibit at the hearing, credited thereon the $1,500 previously advanced to him thus reducing the balance due to $14,807.42. However, at such hearing Conway offered to accept $4,000 in full settlement of his unpaid fees and disbursements.

An exhibit received at the hearing disclosed that a breakdown of the $807.19 claimed to be due Belter consisted of $756.79 fees and disbursements of $50.40, the disbursements being itemized but not the charge for fees. Of Belter's disbursements $9.40 was for publication of notices in the probate proceedings, and $16 covered premiums on the administratrix's bond. Such $25.40 constituted a proper charge and should be allowed against the estate as should the $40 expended July 10, 1954, by Conway for bond premium.

It is our considered judgment that no attorneys' fees or disbursements in litigating the survivorship issue should be allowed against the estate. This is because of Angeline Ven-

ci's personal interest in the outcome coupled with her failure to secure any advance authorization from the court to contract for the same.

At the original trial of the survivorship issue there was also tried the issue of what assets mentioned in the Massemino Eannelli estate were properly assets of the Anna C. Eannelli estate, and, as embraced therein, whether Anna C. Eannelli was a partner in the Granite Lumber Company. Upon a review of the record in this case, and of additional facts set forth in the appendices of the printed briefs in the former appeals, we are satisfied that $350 would be a liberal amount to allow Attorneys Conway and Belter for their services in preparation and trial of such issue, and that the administratrix should be entitled to a credit for the same in her final account. In addition, a further credit should be allowed in the sum of $75 for Belter's incidental services in the estate, such as drafting the papers for the appointment of the administratrix and giving notice to creditors.

The administratrix in her account requests payment of commissions and *per diems* in the sum of $276.99, mileage allowance of $370.20, telephone and telegraph charges of $107.49, motel expense of $42, and "inventory expense" of $58. Under the facts of this case, the allowance of any compensation and expenses lies within the sound discretion of the county court, and that court has seen fit to disallow the same *in toto*. A listed expenditure of $45 for premiums on her bond as administratrix, substantiated by canceled check, is a proper charge against the estate and should be allowed.

There remains for consideration the disbursement made to Kimball, Rothman & Company, certified public accountants of Madison, in the sum of $2,564.78 for an audit of the books and records of the Granite Lumber Company. Before incurring such expenditure, the administratrix applied to the county court for an order authorizing the same. Pursuant to such application the county judge under date of August 1, 1952, entered an order authorizing the administra-

trix to employ such accountants to make such audit. Such order provided "that the reasonable charges of said accountants for said audit, subject to the approval of the court herein, be paid as an expense of administration of the estate of Anna C. Eannelli." The uncontradicted testimony of Mr. Kimball, senior member of such accounting firm, given at the hearing on the account of the administratrix, established the reasonableness of the charges aggregating $2,564.78 for the making of such audit. There is no evidence that the administratrix acted in bad faith in seeking such order of the court, and such order, therefore, affords a complete protection to her in so far as this expenditure is concerned. The fact that such audit viewed in retrospect proved to be of no value to the estate is immaterial.

A restating of the administratrix's account on the basis of our decision herein results as follows:

|  | Dr. | Cr. |
|---|---|---|
| Amount received | $5,000.00 | |
| Disbursements made and expenses incurred properly chargeable to the estate: | | |
| Attorney fees of Vaughn Conway and William Belter for litigating issue of inventory and lumberyard partnership in Massemino Eannelli estate | | $ 350.00 |
| Attorney fees of Belter for services rendered in probating of estate | | 75.00 |
| Bond premiums paid by administratrix | | 45.00 |
| Bond premiums paid by Conway | | 40.00 |
| Bond premiums paid by Belter | | 16.00 |
| Publication costs | | 9.40 |
| Cost of Kimball, Rothman & Co. audit authorized by court | | 2,564.78 |
| Balance for which administratrix is accountable to successor administrator | | 1,899.82 |
| | $5,000.00 | $5,000.00 |

The instant appeal was perfected January 26, 1956. Thereafter, late in April, 1956, the respondents moved this court to dismiss the appeal for failure of counsel for the appellant administratrix to have caused the record to be filed in this court within the time required by Supreme Court Rule 4 (sec. 251.254, Stats.). Under date of May 4, 1956, such motion was denied upon condition that appellant pay $25 motion costs, which condition was complied with. Subsequently, what purported to be the record in this case was filed with the clerk of this court on September 20, 1956. Prior to such date the appeal had been scheduled to be argued on October 11, 1956, the usual warning notice having been mailed to appellant's counsel at least sixty days prior thereto stating that the case was likely to be set for argument at the October assignment, and the customary post-card notice of the exact date of argument having been mailed to counsel at least thirty days prior to October 11, 1956. Appellant's counsel, without making any attempt to get out a brief and appendix, applied to this court for a continuance, which motion was heard on October 9, 1956. At such hearing the motion was granted on condition that appellant pay respondents $50 motion costs, and counsel were told in open court that the appeal would be set for argument at the November assignment if at all possible. It was thereafter scheduled for argument on November 7, 1956.

Not even a typewritten brief or appendix was served by appellant's counsel upon the attorneys for respondents prior to argument. Two days prior to argument, on November 5, 1956, the clerk of this court received for filing from the clerk of the trial court a supplemental return of record containing such essential documents as the respondents' petition for the revocation of the letters of administration originally granted to appellant, the appellant's final account, the copy of the inventory in the Massemino Eannelli estate filed by appellant in the Anna C. Eannelli estate, the trial court's

memorandum decision of November 21, 1955, and the findings of fact and conclusions of law bearing the same date. On the day of the argument appellant's counsel handed to one of respondents' attorneys his check for $50 representing the costs imposed by this court's order of October 9, 1956, as a condition for granting a continuance. In the meantime, handicapped as they were by having received no brief or appendix from appellant's counsel, the attorneys for respondents prepared and served a printed brief prior to argument. The printed brief and appendix of appellant was not filed in this court until November 13, 1956.

With respect to the failure to cause essential portions of the record to be filed with the clerk of this court until two days prior to the adjourned date of the argument, appellant's counsel attempted to place the blame for this upon the inexperience of the clerk of the trial court. There seems to be a fairly widely held belief among some lawyers that counsel for an appellant has no duty to see that the clerk of the trial court transmits a proper record to this court. On the other hand, many careful attorneys do personally supervise the making up of the record and its certification and transmittal to this court. We are of the opinion that this is the duty of the lawyer taking the appeal, and that he should not be permitted to escape the responsibility resulting from a faulty record being transmitted by attempting to blame the clerk of the trial court for such failure.

The attorneys for respondents have moved that the appeal be dismissed for the flagrant failures to comply with the rules of this court governing appeal procedure. However, we believe that it would work a great injustice upon Angeline Venci to punish her for the dereliction of her counsel by granting such motion. Because of such infractions of our rules, we do exercise our discretion to deny costs to appellant even though she has achieved substantial relief by the appeal.

*By the Court.*—The order appealed from is modified so as to reduce the amount that the appellant administratrix is required to pay over to the successor administrator from $5,000 to $1,899.82, and, as so modified, the order is affirmed. No costs are to be taxed and the appellant shall pay the clerk's fees.